IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL OSATO EKENEZA | § | |
| (A-Number 207619895), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:20-cv-334-S-BN |
| | § | |
| CHAD F. WOLF, ET AL., | § | |
| | § | |
| Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Michael Osato Ekeneza, detained at an ICE facility in this district, has, over the past year, filed multiple *pro se* lawsuits in this Court concerning (or adjacent to) his removal proceedings and pre-removal detention.

This action ostensibly seeks mandamus relief as to a visa petition but is also connected to Ekeneza's ongoing challenges to the removal proceedings and his related detention. This latest action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action without prejudice for the reasons and to the extent explained below.

**Applicable Background**

As set out in the government's response filed in *Ekeneza v. Skinner*, No. 3:19-2306-S-BN (N.D. Tex.) ("*Ekeneza III*"), Dkt. No. 6,

Ekeneza is a citizen of Nigeria. [*Ekeneza III*, Dkt. No. 7 ("App.") p.] 3. Ekeneza entered the United States on March 16, 2013, as a nonimmigrant visitor for business. *Id.* Ekeneza's status was adjusted to an F1 student in January 2014. *Id.* His student visa was terminated in March 2015. In 2014, he was convicted for DWI. App. p. 4. On or about June 2, 2018, Ekeneza was arrested for a new DWI offense. *Id.* On that same day, a detainer was placed on him by ICE. App. p. 11. Ekeneza bonded out on his state charges on June 6, 2018, but was held in custody pursuant to the detainer. *Id.* On June 7, 2018, Ekeneza was transferred from the custody of Collin County to ICE. On this same day, DHS issued him a Notice to Appear in removal proceedings, charging him with removability under 8 U.S.C. § 1182(a)(1)(C)(i) for failing to maintain or comply with the conditions of the nonimmigrant status under which he was admitted. App. pp. 1-3.

Given Ekeneza's arrest for a second DWI offense, ICE determined that Ekeneza represented a danger to the community and held him in custody at "no bond." *See* App. p. 4. On or about November 5, 2018, Ekeneza filed an "Application for Redetermination of Custody Status" with the immigration court, requesting that he be given a $1,500 bond. App. p. 4. The immigration court held a hearing on Ekeneza's request for bond on November 15, 2018. *Id.* The immigration court denied the request to be issued a bond and ordered that Ekeneza remain detained without a bond. *Id.* In a written decision issued on December 27, 2018, the immigration court articulated its findings and explained, among other things, that "the Fifth Circuit has recognized [that] the dangers associated with drunk driving are well known and documented and the very nature of the crime represents a serious risk of injury to others," and that "[i]n light of [Ekeneza's] arrest and conviction for DWI in 2014 followed by a second DWI arrest in 2018, the Court finds [Ekeneza] is a danger to the community and should be held without bond." *Id.* (internal quotation marks and citation omitted).

Ekeneza appealed that decision, and on April 9, 2019, the Board of Immigration Appeals issued a decision affirming the immigration court and dismissing Ekeneza's appeal. App. pp. 7-8. On or about July 24, 2019, Ekeneza filed another application for a bond redetermination and the immigration court held a hearing on August 8, 2019. App. p. 9. The immigration court issued a written decision with its findings – again denying Ekeneza's request for a release on bond – on September 4, 2019. App. pp. 9-10. Ekeneza appealed this second denial of bond to the Board of Immigration Appeals; the appeal is still be pending. [As of December 9, 2019,] Ekeneza [was] still in immigration court proceedings.

*Ekeneza III*, Dkt. No. 6 at 2-3.

The government further explained that, as filed, *Ekeneza III* was Ekeneza's

third petition for writ of habeas corpus under 28 U.S.C. § 2241 relating to his detention in immigration custody pending removal proceedings. In his first petition [*Ekenza I*], filed March 15, 2019 in case 3:19 CV-659-M, Ekeneza alleged that the Notice to Appear he received was defective and insufficient and that he should be released from immigration custody. The government filed a response on April 10, 2019. In his second petition [*Ekenza II*], filed October 2, 2019 in case 3:19-CV-2343-N, he challenged the length of time he has spent in immigration pending the finality of his removal proceedings and requesting release from detention. The government filed a response on December 3, 2019.

*Id.* at 1.

Through *Ekeneza III*, Ekenza brought civil rights claims related to his immigration detention following a June 2018 DWI, essentially alleging – against Texas municipalities and/or their officials and/or employees and possibly federal authorities – that he should not have been detained by Collin County and Johnson County pursuant to an ICE detainer.

Ekenza now requests that the Court issue a writ of mandamus to compel immigration officials to adjudicate his pending Petition for Alien Relative (I-130), filed in July 2018, after DHS initiated removal proceedings against him.

Ekenza contends that, through this action, he is "seeking to simply compel the relevant agencies to act, and not to act in a particular way," but he requests that the Court compel the agencies "to adjudicate the pending petition in a timely manner, before [his] next hearing date, which is March 3rd, 2020, or before a fixed date to be determined by" the Court, and he further contends that this relief is necessary "so [his] immigration case can move forward." Dkt. No. 3 at 8-9; *see also id.* at 1-2 (alleging that

the delayed adjudication violated his "due process rights, because the inaction has prevented [him] from submitting [his] application to adjust status to that of a lawful permanent resident to the immigration judge and has kept [him] in detention for almost two years"); *id.* at 5 ("The actions and inactions of the defendants [have] promoted delay in my removal proceedings, thereby keeping me in detention indefinitely, because an action on the pending petition might ultimately result in my immigration case.").

## Legal Standard and Analysis

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."); *cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) ("Subject-matter limitations ... keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." (citations omitted)).

> As a general rule, federal district courts have jurisdiction under 28 U.S.C. § 1331 over "all civil actions arising under the Constitution, law, or treaties of the United States." But Congress may curtail that grant of jurisdiction "by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019).

*O.A. v. Trump*, 404 F. Supp. 3d 109, 127 (D.D.C. 2019).

-4-

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, contains such a scheme, *see* 8 U.S.C. § 1252, under which "[j]udicial review in the removal context is heavily circumscribed," *Duron v. Johnson*, 898 F.3d 644, 646 (5th Cir. 2018); *see Isaula v. Nielsen*, Civ. A. No. H-18-2992, 2019 WL 93307, at *2 (S.D. Tex. Jan. 3, 2019) (noting, for example, that three parts of the INA – 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) – strip "a district court's jurisdiction to hear direct or indirect challenges attacking an immigration judge's final order of removal"); *but see Alam v. Nielsen*, 312 F. Supp. 3d 574, 580-81 (S.D. Tex. 2018) ("As all-encompassing as [Sections 1252(a)(5), 1252(b)(9), and 1252(g)] may seem, the [United States] Supreme Court has noted their limitations.").

Section 1252(g) provides that,

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

> [But] Section 1252(g) does not "cover[ ] the universe of deportation claims." Rather, "it applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" "There are of course many other decisions or actions that may be part of the deportation process."

*Alam*, 312 F. Supp. 3d at 580 (quoting *Reno v. American-Arab Anti-Discrim. Cmte.*, 525

U.S. 471, 482 (1999); emphasis omitted).[1]

Provisions of the INA do not, of course, prevent Ekeneza from challenging his pre-removal detention under the habeas statute. *See, e.g., id.* ("Habeas challenges to immigrant detention are among the claims that lie outside Section 1252(g)'s scope." (citing *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 121 (2001))). And he may continue to pursue that habeas relief through *Ekeneza I* and *Ekeneza II*. But, to the extent that any claim made in this action – which Ekeneza alleges is based on the adjudication of a visa petition that was filed after removal proceedings against him were initiated – arises from the ongoing adjudication of Ekeneza's removal proceedings, the Court lacks jurisdiction over that claim under Section 1252(g).

Turning to his request for mandamus relief, the Court's jurisdiction under Section 1331 and the mandamus statute, 28 U.S.C. § 1361, to consider whether any

---

[1] *See also, e.g., Mochama v. Zwetow*, Civ. A. No. 14-2121-KHV, 2017 WL 36363, at *7 n.10 (D. Kan. Jan. 3, 2017) ("The three discrete actions which fall under the jurisdictional bar of Section 1252(g) represent distinct components of the deportation process. The first action, 'commencing proceedings,' occurs when law enforcement officers apprehend an alien with no legal status in the United States and file a charging document with the immigration court. *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001); *see Maria S. v. Garza*, No. 1:13-CV-108, 2015 WL 4394745, at *3 (S.D. Tex. July 15, 2015) (charging document served on alien gives notice of nature of proceedings and time to prepare defense). 'Adjudicating cases' refers to removal proceedings which lead to a hearing before an immigration judge who decides the 'inadmissibility or deportability of an alien.' 8 U.S.C. § 1229a. If the immigration judge finds that an alien has no legal status to remain in the United States, the immigration judge issues an order of removal. *Id.* The third action, 'executing removal orders,' occurs when officials remove an illegal alien from the United States pursuant to a court order. *See Sifuentes-Barraza v. Chertoff*, No. 03-51202, 2006 WL 2522143, at *1 (5th Cir. Sept. 1, 2006).").

delay in adjudicating an immigration application is unreasonable is arguably not stripped by Section 1252(g) or any other provision of the INA, such as 8 U.S.C. § 1252(a)(2)(B). *See, e.g., Elmalky v. Upchurch*, No. 3:06-cv-2359-B, 2007 WL 944330, at *2-*6 (N.D. Tex. Mar. 28, 2007); *Ahmadi v. Chertoff*, 522 F. Supp. 2d 816, 818-19 (N.D. Tex. 2007); *see also Parcha v. Cuccinelli*, No. 4:20-CV-015-SDJ, 2020 WL 607103, at *5-*7 (E.D. Tex. Feb. 7, 2020); *M.J.L. v. McAleenan*, ___ F. Supp. 3d ____, No. A-19-CV-00477-LY, 2019 WL 6039971, at *4-*6 (W.D. Tex. Nov. 13, 2019).

Nevertheless, "[j]urisdiction depends on 'whether mandamus would be an appropriate means of relief.'" *Elmalky*, 2007 WL 944330, at *2 (quoting *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)). "Mandamus relief is 'extraordinary,' requiring a plaintiff to establish that: (1) he has a clear right to the relief sought; (2) the defendant holds a plainly defined and mandatory, nondiscretionary duty to do the act in question; and (3) no other adequate remedy is available." *Id.* (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992)).

And, based on the facts as alleged by Ekeneza, he has not shown that he has a clear right to the relief sought. Ekeneza's own complaint includes a Notice of Intent to Deny Visa Petition dated July 12, 2019, *see* Dkt. No. 3 at 13-18, which not only belies his claim that immigration officials have delayed the adjudication of his visa but also reflects their reasons for determining that the petition should be denied: his failure "to provide sufficient documents or evidence that supports [he] entered [his] marriage with [his] spouse in good faith" and that "it appears [he] remains legally married to one or

more of his previous spouses," *id.* at 17.

As a panel of the United States Court of Appeals for the Seventh Circuit held in

an analogous context,

> [m]andamus jurisdiction is an extraordinary remedy and may be invoked
> only if [a petitioner] shows: (1) he has a clear right to the relief sought; (2)
> the INS has a clear duty to perform; and (3) no other adequate remedy is
> available. *See Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir. 1989).
> Kitphothiyan notes that he meets these requirements because his wife of
> eight years, Sunanta Sessions, is indeed a United States citizen, and that
> they have had a relative visa petition filed for seven years, and that if the
> visa application is not processed he will be deported.
>    Kitphothiyan, however, does not meet the first requirement for
> mandamus. Specifically, due to the errors on his application form which
> misrepresented his immigration status, it is not clear that he is eligible
> for a relative visa. A determination by the INS that the facts stated in a
> petition for an immediate relative visa are not true is a basis for denial
> of the petition. *See* INA § 204(b), 8 U.S.C. § 1154(b). Kitphothiyan argues
> that the defects in that form are not fatal and the information which was
> erroneous as filed does not go to the merits of the application. While this
> may indeed be the case, and eventually lead to the issuance of a relative
> visa, it is not a "clear right to the relief sought." The district court
> therefore properly determined it lacked jurisdiction for mandamus relief.

*Kitphothiyan v. Ashcroft*, 74 F. App'x 623, 627 (7th Cir. 2003) (per curiam); *see also*

*Albarran v. Wong*, 157 F. Supp. 3d 779, 787 n.9 (N.D. Ill. 2016) ("Even if we had

jurisdiction, Flores has not adequately alleged that 'he has a clear right to the relief

sought,' as necessary to proceed with a mandamus claim." (citing *Kitphothiyan*, 74 F.

App'x at 627; citations omitted)).

## Recommendation

The Court should dismiss this action without prejudice for the reasons and to

the extent explained in these findings, conclusions, and recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: February 20, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE